# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 3:17-CV-00020-MR

| | |
|---|---|
| SAMMY KAY MORROW, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>NANCY A. BERRYHILL, )<br>Acting Commissioner of Social )<br>Security )<br>)<br>Defendant. )<br>_____ ) | **MEMORANDUM OF<br>DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 11] and the Defendant's Motion for Summary Judgment [Doc. 15]. As more fully explained below, the Court will grant the Plaintiff's motion and remand this matter.

## I. PROCEDURAL BACKGROUND

The Plaintiff, Sammy Kay Morrow ("Plaintiff"), asserts that his sciatica and substance abuse constitute severe mental and physical impairments under the Social Security Act (the "Act") rendering him disabled. On April 18, 2012, the Plaintiff filed an application for supplemental security benefits under Title XVI of the Act, alleging an onset date of March 9, 2012.

[Transcript ("T.") at 248]. The Plaintiff's application was denied initially and upon reconsideration. [T. at 165, 169]. Upon Plaintiff's request, a hearing was held on May 14, 2015, before an Administrative Law Judge ("ALJ"). [T. at 41]. Present at the hearing were the Plaintiff; Melissa Wilson, Plaintiff's non-attorney representative; and a vocational expert ("VE"). [Id.]. On June 24, 2015, the ALJ issued a decision, wherein the ALJ concluded that the Plaintiff was not disabled. [Id. at 25-35]. On August 13, 2015, the Plaintiff requested that the Appeals Council (the "Council") review the ALJ's decision. [Id. at 19-21]. On October 6, 2016, the Council notified the Plaintiff that it had granted Plaintiff's request for review of the ALJ's decision. [Id. at 4]. On November 18, 2016, the Council issued its decision wherein it affirmed the decision of the ALJ. [Id. at 1]. The Appeals Council adopted most of the ALJ's decision, but differed in its conclusion at step 4 of the sequential evaluation process and found the Plaintiff not disabled at step 5. [Id. at 5-6]. As such, the decision of the Appeals Council, including those portions of the ALJ's decision adopted therein, is the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "When examining [a Social Security Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted).

"In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's

decision. Id. (internal quotation marks omitted). To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013).

## III. THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration Regulations set out a detailed five-step process for reviewing applications for disability. 20 C.F.R. §§ 404.1520, 416.920; Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden is on the claimant to make the requisite showing at the first four steps. Id.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. If so, the claimant's application is denied

regardless of the medical condition, age, education, or work experience of the claimant. Id. (citing 20 C.F.R. § 416.920). If not, the case progresses to step two, where the claimant must show a severe impairment. If the claimant does not show any physical or mental deficiencies, or a combination thereof, which significantly limit the claimant's ability to perform work activities, then no severe impairment is established and the claimant is not disabled. Id.

At step three, the ALJ must determine whether one or more of the claimant's impairments meets or equals one of the listed impairments ("Listings") found at 20 C.F.R. 404, Appendix 1 to Subpart P. If so, the claimant is automatically deemed disabled regardless of age, education or work experience. Id. If not, before proceeding to step four, the ALJ must assess the claimant's residual functional capacity ("RFC"). The RFC is an administrative assessment of "the most" a claimant can still do on a "regular and continuing basis" notwithstanding the claimant's medically determinable impairments and the extent to which those impairments affect the claimant's ability to perform work-related functions. SSR 96-8p; 20 C.F.R. §§ 404.1546(c); 404.943(c); 416.945.

At step four, the claimant must show that his or her limitations prevent the claimant from performing his or her past work. 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 634. If the claimant can still perform his or her

past work, then the claimant is not disabled. Id. Otherwise, the case progresses to the fifth step where the burden shifts to the Commissioner. At step five, the Commissioner must establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative work which exists in substantial numbers in the national economy. Id.; Hines v. Barnhart, 453 F.3d 559, 567 (4th Cir. 2006). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 635. If the Commissioner succeeds in shouldering her burden at step five, the claimant is not disabled and the application for benefits must be denied. Id. Otherwise, the claimant is entitled to benefits. In this case, the ALJ rendered a determination adverse to the Plaintiff at the fourth step. On review, the Appeals Council adopted the ALJ's decision through step 3 and the ALJ's residual functional capacity assessment, but differed in its conclusion at step 4 and found instead that the Plaintiff was not disabled at step 5.

## IV. THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his application date, April 18, 2012. [T. at 27]. At step two, the ALJ found that the Plaintiff has severe impairments including sciatica

and substance abuse. [Id.]. At step three, the ALJ determined that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals the Listings. [Id. at 28]. The ALJ then determined that the Plaintiff, notwithstanding his impairments, has the RFC:

> [T]o perform medium work as defined in 20 CFR § 416.967(c) except he can only perform simple, routine, repetitive tasks.

[Id. at 29].

The ALJ identified Plaintiff's past relevant work as a store laborer and held that Plaintiff "is able to perform it as actually and generally performed." [Id. at 34]. The ALJ therefore concluded that the Plaintiff was not "disabled" as defined by the Social Security Act from April 18, 2012, the date his application was filed, through June 24, 2015, the date of the ALJ's decision. [Id. at 35].

## V. THE APPEALS COUNCIL'S REVIEW

On review of the ALJ's decision, the Council adopted the ALJ's "findings or conclusions regarding whether the [Plaintiff] is disabled." [T. at 5]. The Council also agreed with the ALJ's findings at steps one, two, and three of the sequential evaluation process and adopted the ALJ's "finding that the claimant has the residual functional capacity to perform work at the medium exertional level as defined in 20 CFR 416.967(c), and that he is

limited to simple, routine, repetitive tasks." [Id.]. The Council, however, disagreed with the ALJ's finding at step 4 that the Plaintiff was not disabled because he could perform his past relevant work as a "store laborer." [Id. at 34-5].

The Council reasoned as follows. At the hearing, the VE testified that Plaintiff's past relevant work at the "Army Navy Store," as the Plaintiff actually performed it, fit within the descriptions of two different jobs combined, building superintendent, DOT Code 382.664-010, and store laborer, DOT Code 922.687-058. [T. at 86-7, 89-90]. As such, because the job that Plaintiff could perform was a "composite job," meaning a job having significant elements of two or more occupations, there is no counterpart in the Dictionary of Occupational Titles. [Id. at 5]. Furthermore, "[i]n order to find that a claimant can perform a composite job, he must be able to do the job as actually performed, since composite jobs do not exist in the national economy." [Id.]. The Plaintiff reported lifting up to 75 pounds in his previous work at the Army Navy Store. [T. at 293, see T. at 88-9]. Lifting up to 75 pounds is not consistent with the ALJ's finding that the Plaintiff can only do work at the medium exertional level, which requires lifting up to 50 pounds occasionally. [T. at 5 (citing 20 C.F.R. § 416.967(c))]. As such, the Plaintiff

is not able, given the residual functional capacity assessed by the ALJ, to perform the composite job of "store laborer." [T. at 5-6].

Because the Council disagreed with the ALJ's conclusion at step 4, it continued to step 5 of the sequential evaluation process. At step 5, the Council assessed whether the Plaintiff "is capable of performing a significant number of jobs based upon his age, education, work experience and residual functional capacity." [T. at 6]. Based on the Plaintiff's age of 61 years at the date of his application, his high school education, and his ability to communicate in English, the Council found that the Plaintiff was not disabled within the framework of the Medical-Vocational Rules during the period under consideration, whether or not he has transferable job skills. [Id. at 6 (citing 20 C.F.R. Pt 404, Subpt. P, App. 2, § 203.06)]. Furthermore, the Council found that "the occupational base of work at the medium exertional level is not eroded by the claimant's limitation to simple, routine, repetitive tasks [ ]." [Id. (citing SSR 83-10)].

## VI. DISCUSSION[1]

In this appeal, the Plaintiff contends the ALJ erred in assessing his mental residual functional capacity and that this error requires remand. [Doc.

---

[1] Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

12 at 5, 15]. Specifically, the Plaintiff contends the ALJ failed to give "a full function-by-function analysis of the nonexertional mental functions associated with [Plaintiff's] mental impairments. When the ALJ does not make a complete mental RFC assessment as required by SSR 96-8p the decision must be reversed." [Doc. 12 at 5]. The Defendant, on the other hand, asserts that the ALJ's assessment of the Plaintiff's mental RFC was proper, supported by substantial evidence, and reached through application of the correct legal standard. [Doc. 16 at 9].

Social Security Ruling 96-8p explains how adjudicators should assess residual functional capacity. The Ruling instructs that the RFC "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the Regulations.[2] SSR 96-8p; see also Mascio, 780 F.3d at 636 (remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite

---

[2] The functions listed in the Regulations include the claimant's (1) physical abilities, "such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching);" (2) mental abilities, "such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting;" and (3) other work-related abilities affected by "impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions." 20 C.F.R. § 416.945.

contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review) (citation omitted).

When a plaintiff's claim is based on severe mental health impairments, the Social Security Rules and Regulations require a much more in-depth review and analysis of the plaintiff's past mental health history. The Regulations make plain that "[p]articular problems are often involved in evaluating mental impairments in individuals who have long histories of … prolonged outpatient care with supportive therapy and medication." 20 C.F.R. § 404, Appendix 1 to Subpart P, § 12.00(E). The Regulations, therefore, set forth a mechanism for this type of review and documentation, known as the "special technique," to assist ALJs in assessing a claimant's mental RFC. See SSR 96-8P; 20 C.F.R. §§ 404.1520a, 416.920a.

With regard to mental health issues, "[t]he determination of mental RFC is crucial to the evaluation of your capacity to do [substantial gainful activity] when your impairment(s) does not meet or equal the criteria of the listings, but is nevertheless severe." 20 C.F.R. § 404, Appendix 1 to Subpart P, § 12.00(A). Therefore, the determination of mental RFC, as noted above, is accomplished through the use of the aforementioned "special technique."

> Under the special technique, we must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s)…. If we

> determine that you have a medically determinable mental impairment(s), we must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document our findings[.]

20 C.F.R. § 404.1520a(b). For this reason, Rule 96-8p explains as follows:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.

SSR 96-8p. "Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Id.

In this case, the ALJ failed to conduct any function-by-function analysis of Plaintiff's mental health limitations and work-related abilities prior to expressing her RFC assessment. [See T. at 29]. At step three, in deciding Plaintiff's mental impairments did not meet or medically equal the "Paragraph

B" criteria[3] in listing 12.09 (substance addiction disorders)[4], as analyzed with 12.08 (personality disorders)[5], the ALJ made findings on Plaintiff's limitations and difficulties relative to activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. [Id. at 28-9]. The ALJ then noted:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. <u>The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p)</u>. Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

[T. at 29 (emphasis added)].

---

[3] Paragraph B of these listings provides the functional criteria assessed, in conjunction with a rating scale, to evaluate how a claimant's mental disorder limits his functioning. These criteria represent the areas of mental functioning a person uses in a work setting. They are: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. § 404, Appendix 1 to Subpart P, § 12.00(A).

[4] Section 12.09 has been removed from the Mental Disorders Listing of Impairments since the date of the ALJ's decision.

[5] Section 12.08 of the Mental Disorders Listing of Impairments has been changed from "personality disorders" to "personality and impulse-control disorders" since the date of the ALJ's decision.

By finding in step three that Plaintiff suffers from mild restriction in activities of daily living; mild difficulties in social functioning; and moderate difficulties in concentration, persistence or pace, the ALJ found that facts exist which correlate with a limitation on Plaintiff's ability to carry out the areas of mental functioning listed in Paragraph B.  In formulating Plaintiff's RFC, however, the ALJ failed to explain whether these limitations translated into any actual functional limitations.  See Patterson v. Comm'r Soc. Sec. Admin., 846 F.3d 656, 659 (4th Cir. 2017) ("When evaluating and documenting the severity of a claimant's mental impairment at steps 2 and 3 – and step 4 – the ALJ must follow [the] special technique.") (citing 20 C.F.R. § 404.1520a(a) (emphasis added in Patterson)).  It appears the ALJ attempted to account for Plaintiff's moderate difficulties with concentration, persistence or pace by limiting Plaintiff to "simple, routine, repetitive tasks." [T. at 29].  A limitation to simple, routine, repetitive tasks, however, does not "account for a limitation in concentration, persistence or pace." Mascio, 780 F.3d at 638; see also Kitrell v. Colvin, No. 5:14-cv-163-RJC, 2016 WL 1048070, at *4 (W.D.N.C. March 6, 2016) (Conrad, J.); Scruggs v. Colvin, No. 3:14-cv-466-MOC, 2015 WL 2250890, at *5-6 (W.D.N.C. May 13, 2015) (Cogburn, J.).  A reviewing court cannot be "left to guess about how the ALJ arrived at his conclusions on [a plaintiff's] ability to perform relevant functions

and indeed, remain uncertain as to what the ALJ intended." Mascio, 780 F.3d at 637. It is the duty of the ALJ to "build an accurate and logical bridge from the evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (citation omitted). "Without this explanation, the reviewing court cannot properly evaluate whether the ALJ applied the correct legal standard or whether substantial evidence supports his decisions, and the only recourse is to remand the matter for additional investigation and explanations." Mills v. Berryhill, No. 1:16-cv-25-MR, 2017 WL 957542, at *4 (W.D.N.C. Mar. 10, 2017) (Reidinger, J.) (citation omitted). As the Fourth Circuit stated in Mascio, "[p]erhaps the ALJ can explain why [Plaintiff's] moderate limitation in concentration, persistence or pace … does not translate into a limitation in [his] residual functional capacity…. But because the ALJ gave no explanation, a remand is in order." 780 F.3d at 638.

For these reasons, this matter will be remanded to the ALJ so that she may properly articulate her assessment of the Plaintiff's mental impairments *before* expressing an RFC determination. See Mascio, 780 F.3d at 636. A careful function-by-function analysis of Plaintiff's mental limitations and work abilities is crucial to the ALJ's ability to thereafter "build an accurate and logical bridge from the evidence to his conclusion." Monroe, 826 F.3d at 189 (citation omitted). A narrative assessment describing how the evidence

supports each conclusion, as required by SSR 96-8p, is essential and should account for Plaintiff's limitations in concentration, persistence or pace and include an assessment of whether Plaintiff can perform work-related tasks for a full work day. See Scruggs, 2015 WL 2250890, at *5 (applying Mascio to find an ALJ must not only provide an explanation of how a plaintiff's mental limitations affect her ability to perform work-related functions, but also her ability to perform them for a full workday).

## VII. CONCLUSION

For the reasons stated, remand is required. On remand, the ALJ should conduct a proper function-by-function analysis of the Plaintiff's mental residual functional capacity in accordance with and evidencing use of the "special technique" set forth in 20 C.F.R. § 404.1520a and Rule 96-8p.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 11] is **GRANTED** and the Defendant's Motion for Summary Judgment [Doc. 15] is **DENIED**. Pursuant to the power of this Court to enter judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED** and the case is hereby **REMANDED** for

further administrative proceedings consistent with this opinion. A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: February 5, 2018

Martin Reidinger
United States District Judge